## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DWANA SELESTAN,<br>    **Plaintiff** | CIVIL ACTION |
| VERSUS | NO.  23-2386 |
| PORTIER, LLC, ET AL.,<br>    **Defendants** | SECTION: "E" (2) |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant Portier, LLC ("Portier").[1] The motion was filed on May 2, 2024[2] and set for submission on June 5, 2024.[3] Local Rule 7.5 requires a memorandum in opposition to a motion to be filed no later than eight days before the noticed submission date, meaning the deadline to file an opposition in this instance was May 28, 2024.[4] To date, no opposition to the motion has been filed and Plaintiff has failed to move the Court to extend her deadline to file an opposition.[5] Portier's motion for summary judgment is, therefore, unopposed. Although this dispositive motion is unopposed, summary judgment is not automatic, and the Court must determine whether Defendant Portier is entitled to judgment as a matter of law.[6]

## BACKGROUND

On May 10, 2023, Plaintiff Selestan filed an amended petition for damages in the Civil District Court for the Parish of Orleans asserting claims under Louisiana state tort

---

[1] R. Doc. 59.
[2] *Id.*
[3] R. Doc. 59-10.
[4] *See id.* "Each party opposing a motion must file and serve a memorandum in opposition to the motion with citations of authorities no later than eight days before the noticed submission date." L.R. 7.5.
[5] The Court emailed all counsel on May 29, 2024, asking if Plaintiff intended to oppose Defendant's motion for summary judgment. Plaintiff's counsel did not respond to the Court's email, which the Court interprets as confirmation that she does not oppose.
[6] *See, e.g, Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006); Fed. R. Civ. P. 56(a).

law related to personal injury suffered after she was involved in a traffic accident on May 10, 2022.[7] In the Amended Petition, Plaintiff alleges that Brittany Randolph negligently failed to stop at her designated stop sign near the intersection of North Robertson Street and Louisa Street in New Orleans and collided with Plaintiff's vehicle.[8] Plaintiff seeks to hold Randolph liable for damages resulting from the accident, jointly and *in solido* with her alleged employer, Portier, and its insurer, United Financial Casualty Company.[9]

On July 10, 2023, Defendants timely removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.[10] On May 2, 2024, Defendant Portier filed the instant Motion for Summary Judgment, challenging Plaintiff's allegation that Randolph was operating her car "in the course and scope [of] her employment" with Portier at the time of the accident.[11] Portier contends there is no genuine issue of material fact that the relationship between Portier and Randolph was one of "princip[al]-independent contractor."[12] Accordingly, Portier claims no "employment or agency relationship [] exist[ed] with Randolph," and seeks summary judgment on the issue of Portier's vicarious liability for the allegedly negligent acts of Randolph.[13] Portier's motion is unopposed.

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[7] R. Doc. 2-2.
[8] *Id.* at pp. 2-3.
[9] *Id.* at pp. 3-4. On April 4, 2024, the Court granted Plaintiff's *ex parte* motion to dismiss with prejudice Defendants Old American Indemnity Company and Bluefire Insurance Services a/k/a Aggressive Insurance Services, in their capacity as Brittany Randolph's automotive liability insurers, and Defendant Brittany Randolph from any personal excess exposure. R. Doc. 43. Plaintiff reserved her rights to claims against Defendants Portier, United Financial Casualty Company, and Brittany Randolph in her capacity as an insured or employee. *Id.*
[10] R. Doc. 2.
[11] R. Doc. 59-1 at p. 2 (citing Plaintiff's Amended Petition for Damages, R. Doc. 2-2).
[12] R. Doc. 59 at p. 1.
[13] R. Doc. 59-1 at pp. 1, 7.

of law."[14] "An issue is material if its resolution could affect the outcome of the action."[15] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[16] All reasonable inferences are drawn in favor of the nonmoving party.[17] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[18]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[19] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[20]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to

---

[14] Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986).
[15] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[16] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150−51 (2000).
[17] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[18] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[19] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263−64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[20] *Celotex*, 477 U.S. at 322−24.

establish an essential element of the nonmovant's claim.[21] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[22] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[23] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[24] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[25] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its

---

[21] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. and Pro. §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[22] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

[23] *Celotex*, 477 U.S. at 332–33.

[24] *Id.*

[25] *Id.* at 332–33, 333 n.3.

ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[26]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[27]

## UNDISPUTED FACTS

Because Defendant Portier's Motion for Summary Judgment is unopposed, the Court considers the attached statement of uncontested facts[28] to be admitted pursuant to Eastern District of Louisiana Local Rule 56.2.[29] On March 30, 2022, Brittany Randolph entered into a Platform Access Agreement ("PAA") with Portier to gain access to the Uber Eats platform, which "explicitly provides that Randolph, like other independent delivery people, has no employment or agency relationship with Portier."[30] Portier, a wholly-owned subsidiary of Uber Technologies, Inc. ("Uber"),[31] contracts with delivery people like Randolph to authorize access to Uber's "Uber Eats" platform,[32] which "connects local merchants, consumers, and delivery people interested in providing delivery services."[33]

---

[26] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[27] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[28] R. Doc. 59-2.
[29] "All material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement." L.R. 56.2.
[30] R. Doc. 59-2 at ¶ 31, 32 (citing Aff. of Erin O'Keefe, Senior Manager, Corporate Business Ops with Uber [hereinafter O'Keefe Aff.], R. Doc. 59-3 at ¶ 20; Platform Access Agreement Between Portier and Brittany Randolph [hereinafter PAA], R. Doc. 59-4 at §§ 1.1, 1.2, 2.3, 2.6(b), 2.7(c)).
[31] Uber develops and maintains technological platforms including "Uber Eats." *Id.* at ¶¶ 3, 4 (citing O'Keefe Aff., R. Doc. 59-3 at ¶¶ 3, 4).
[32] *Id.* at ¶ 7 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 5).
[33] *Id.* at ¶ 4 (citing O'Keefe Aff., R. Doc. 59-3 at ¶¶ 3, 4).

When an Uber Eats user orders food from a restaurant through the platform, a nearby delivery person signed into the Uber Eats Driver App will receive a delivery request, which they may choose to accept.[34] Users compensate delivery people for their services through the Uber Eats platform, with Portier acting as a "limited payment collection agent," which collects payment on the delivery person's behalf and disperses the funds, less a service fee, to the delivery person.[35]

Delivery people are "in complete control of their income-earning potential"[36] and are "free to operate their independent delivery business as they see fit."[37] Delivery people, alone choose when, where, how long, and to whom they provide their delivery services.[38] Delivery people can select their preferred route[39] and means to complete a delivery,[40] choose what to wear when providing delivery services,[41] decide when to take vacations,[42] determine when and at what frequency they wish to get paid,[43] and may use other software applications to connect with delivery leads.[44] Defendant Portier does not own, operate, or service vehicles used by delivery people.[45] Instead, delivery people who choose

[34] *Id.* at ¶¶ 5, 8, 9 (citing O'Keefe Aff., R. Doc. 59-3 at ¶¶ 6, 7, 8). "The choice [to accept a delivery request] is entirely up to the Delivery Person presented with the request through the [Uber Eats] Driver App." *Id.* at ¶ 10. Further, a delivery person may cancel requests previously accepted or "end a delivery for any reason," at their sole discretion. *Id.* at ¶ 13 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 9).

[35] *Id.* at ¶¶ 24-27 (citing O'Keefe Aff., R. Doc. 59-3 at ¶¶ 16-18; PAA, R. Doc. 59-4 at §§ 2.6, 4). Portier does not withhold taxes on behalf of delivery people, but files an IRS form 1099-K for those who meet the IRS reporting threshold. *Id.* at ¶¶ 29-30 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 19).

[36] *Id.* at ¶ 17 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 11) (explaining delivery people may operate their business as their sole income source or choose to accept requests only during certain times).

[37] *Id.* at ¶ 11 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 8).

[38] *Id.* at ¶ 12 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 9).

[39] *Id.* at ¶ 15 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 10) (explaining some delivery people use navigation technology, while others rely on personal knowledge of the area).

[40] *Id.* at ¶ 14 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 8) (explaining that some delivery people use a motor vehicle, while others use bicycles or walk).

[41] *Id.* at ¶ 21 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 14).

[42] *Id.* at ¶ 22 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 15).

[43] *Id.* at ¶ 28 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 18) (explaining that delivery people may enroll in Instant Pay, a service that allows them to withdraw earnings multiple times a day).

[44] *Id.* at ¶ 18 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 11).

[45] *Id.* at ¶ 21 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 13).

to use a motor vehicle, like Randolph, are responsible for procuring, maintaining, and servicing their vehicles.[46]

## LAW AND ANALYSIS

Louisiana Civil Code article 2320 "provides the basis for holding an employer liable for the acts of [its] employee."[47] Generally, "[a]n employer's vicarious liability for conduct not [its] own extends only to the employee's tortious conduct which occurs within the course and scope of that employment."[48] However, under Louisiana law, "a principal is not liable for the negligent acts of an independent contractor acting pursuant to the contract."[49] "The distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis."[50] In *Hickman v. Southern Pacific Railroad Co.*,[51] the Louisiana Supreme Court enumerated five factors that are relevant in determining whether an employer-employee relationship exists:

> (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.[52]

"[N]o one factor is controlling; rather, the totality of the circumstances must be considered, and the burden of proof is on the party seeking to establish an employer-

---

[46] *Id*. at ¶ 19, 20 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 12).
[47] *Woolard v. Atkinson*, 43,322, at p. 7 (La. App. 2 Cir. 7/16/08), 988 So. 2d 836, 840.
[48] *Id*. at p. 3; 988 So. 2d at 838 (citing *Orgeron v. McDonald*, 93–1353 (La. 7/5/94), 639 So. 2d 224).
[49] *Graham v. Amoco Oil Co*., 21 F.3d 643, 645 (5th Cir. 1994).
[50] *Tower Credit, Inc. v. Carpenter*, 2001-2875, at p. 6 (La. 9/4/02), 825 So. 2d 1125, 1129.
[51] 262 So. 2d 385 (1972).
[52] *Carpenter*, 2001-2875, at p. 6, 825 So. 2d at 1129 (citing *Hickman*, 262 So. 2d at 390-91).

employee relationship."[53] However, "[t]he single most important factor to consider in deciding whether the employer-employee relationship exists . . . is the right of the employer to control the work of the employee."[54] "[I]t is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists."[55]

In its Motion for Summary Judgment, Defendant Portier argues the terms of the PAA and the undisputed facts "make it unequivocally clear that Portier did not exercise the necessary control for an employment or agency relationship to exist" with Brittany Randolph, such that vicarious liability does not attach for her allegedly negligent acts.[56] Portier contends that the five *Hickman* factors "make it abundantly clear that the relationship, if any, between Randolph and Portier [was] that of independent contracting parties."[57] The Court agrees.

On the first factor, it is undisputed that a valid contract, the PAA, existed between Portier and Randolph.[58] While the PAA explicitly provides that Randolph "has no employment or agency relationship with Portier,"[59] in Louisiana, "[t]he existence of an independent contractor agreement is not necessarily dispositive of the issue of whether [a worker] is an independent contractor, as opposed to an employee."[60] Thus, although the first factor favors finding that Randolph was an independent contractor rather than an employee, the Court cannot rely on the PAA's express provision defining the parties'

---

[53] *Bolden v. Tisdale*, 2021-00224, at p. 13 (La. 1/28/22), 347 So. 3d 697, 708 (citing *Hillman v. Comm-Care, Inc.*, 01-1140, p. 8 (La. 1/15/02), 805 So. 2d 1157, 1162).
[54] *Id.* (citing *Roberts v. State*, 404 So. 2d 1221, 1225 (La. 1981)).
[55] *Hickman*, 262 So. 2d at 391.
[56] R. Doc. 59-1 at p. 7.
[57] *Id.* at p. 11.
[58] R. Doc. 59-2 at ¶ 31, 32 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 20; PAA, R. Doc. 59-4).
[59] *Id.*
[60] *Arroyo v. East Jefferson Gen. Hosp.*, 06-799, p. 6 (La. App. 5 Cir. 3/13/07), 956 So. 2d 661, 664.

relationship and must evaluate the *Hickman* factors on the totality of the circumstances.[61]

As to the second and third *Hickman* factors, Portier argues "Randolph was allowed complete autonomy in providing" and maintained control over the delivery services.[62] The Court agrees that these factors favor a finding that Randolph was an independent contractor. It is undisputed that, as a delivery person, Randolph was allowed to set her own hours,[63] choose to accept or decline delivery requests,[64] select her preferred routes[65] and means to complete deliveries,[66] choose what to wear when providing delivery services,[67] decide when to take vacations,[68] determine when and at what frequency she wished to get paid,[69] and use other software applications to connect with delivery leads.[70] These undisputed facts support that Randolph's work as a delivery person was "of an independent nature" and demonstrate she could "employ non-exclusive means" to accomplish the work "without being subject to the control and direction" of Portier.[71]

Under the fourth *Hickman* factor, the Court considers whether "there is a specific price for the overall undertaking agreed upon."[72] Portier contends "Randolph was provided with an upfront price for each delivery request, which accounted for the applicable service fees paid to Portier."[73] While Portier's argument suggests the fourth

---

[61] *Bolden*, 2021-00224, at p. 13, 347 So. 3d at 708.
[62] R. Doc. 59-1 at pp. 8, 11.
[63] R. Doc. 59-2 at ¶ 12 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 9).
[64] *Id*. at ¶¶ 5, 8, 9 (citing O'Keefe Aff., R. Doc. 59-3 at ¶¶ 6, 7, 8).
[65] *Id*. at ¶ 15 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 10).
[66] *Id*. at ¶ 14 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 8).
[67] *Id*. at ¶ 21 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 14).
[68] *Id*. at ¶ 22 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 15).
[69] *Id*. at ¶ 28 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 18).
[70] *Id*. at ¶ 18 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 11).
[71] *See Carpenter*, 2001-2875, at p. 6, 825 So. 2d at 1129 (citing *Hickman*, 262 So. 2d at 390-91).
[72] *Id*.
[73] R. Doc. 59-1 at pp. 8-9 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 17; PAA, R. Doc. 59-4 at § 2.6(a) (providing that "[a]ccepting a delivery request creates a direct business . . . between [the delivery person] and [the] delivery recipient in accordance with the terms of the delivery service" and that "upon acceptance of a delivery request, [the delivery person] may incur Uber fees")).

factor favors a finding that Randolph was an independent contractor, it is unclear whether the evidence cited supports Portier's argument. Thus, the Court finds this factor is neutral.

Finally, under the fifth *Hickman* factor, the Court must consider whether "the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach."[74] Portier argues that, under the PAA, "Randolph was merely granted access to the [Uber Eats] Driver App and agreed to pay Portier for the services provided by the Driver App," thus "this relationship is not akin to the standard 'termination' of traditional employment."[75] One undisputed fact is relevant to this factor—Randolph was allowed to use other software applications to connect with delivery leads.[76] However, because it is unclear whether the evidence cited supports a finding that the fifth *Hickman* factor favors finding that Randolph was an independent contractor, the Court finds this factor is likewise neutral.

On the totality of the circumstances, the Court finds the *Hickman* factors weigh in favor of finding that Brittany Randolph was an independent contractor rather than an employee of Portier. Three *Hickman* factors, including the "most important" one—"the right of the employer to control the work of the employee"—support a finding that Randolph and Portier were parties to an independent contractor relationship.[77] Although the Court finds the fourth and fifth *Hickman* factors are neutral, the Court will not construe these factors to favor a finding of employer-employee relationship, because the "burden of proof is on the party seeking to establish an employer-employee relationship"[78] and no other party filed opposed Portier's arguments on the factors.

---

[74] *Carpenter*, 2001-2875, at p. 6, 825 So. 2d at 1129 (citing *Hickman*, 262 So. 2d at 390-91).
[75] R. Doc. 59-1 at p. 9.
[76] R. Doc. 59-2 at ¶ 18 (citing O'Keefe Aff., R. Doc. 59-3 at ¶ 11).
[77] *See Bolden*, 2021-00224, at p. 13, 347 So. 3d at 708 (citing *Roberts*, 404 So. 2d at 1225).
[78] *Id.* at p. 13, 347 So. 3d at 708 (citing *Hillman*, 01-1140, p. 8, 805 So. 2d at 1162).

Because Randolph was an independent contractor, Portier cannot be vicariously liable for the allegedly negligent acts of Randolph as a matter of law under Civil Code article 2320, and summary judgment will be granted in favor of Portier.

### **CONCLUSION**

**IT IS ORDERED** that Defendant Portier's Motion for Summary Judgment is **GRANTED**.[79] Judgment is granted in favor of Defendant Portier, LLC, and against Plaintiff Dwana Selestan on all claims.

**New Orleans, Louisiana, this 6th day of June, 2024.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[79] R. Doc. 59.